IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON EDWARD LANGFORD,

      Plaintiff,                               No. CIV S-07-0366 EFB

    vs.

MICHAEL J. ASTRUE,                 <u>ORDER</u>
Commissioner of Social Security,

      Defendant.
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's motion for summary judgment or remand is denied, the Commissioner's motion for summary judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

**I. BACKGROUND**

      Plaintiff, born July 6, 1975, applied for disability benefits on April 22, 2004. Administrative Record ("AR") 30-34, 45-47. Plaintiff alleged that he was unable to work since January 1, 2003, due to a learning disability, being illiterate, getting things backward, trouble getting along with others, not liking being told what to do, and anger issues. AR 30, 36-37. At the time of his application for benefits, plaintiff was twenty-eight years old, and had completed

1

schooling only through tenth or eleventh grade. AR 120, 156. Plaintiff lives with his mother, and has three children who do not live with him. AR 127, 156.

At the April 25, 2006, hearing before administrative law judge ("ALJ") Mark C. Ramsey, plaintiff testified that he reads and writes at about a third grade level, AR 163, and that he worked as a forklift operator in 2001, and possibly at a restaurant in 2002. AR 156-57. He testified that he does not do any work around the house, that he watches television and spends time with his brother, but otherwise has no hobbies. AR 157-60. He also testified that he received SSI benefits as a child, but did not recall why. AR 166.

The ALJ issued a decision on July 24, 2006, finding that plaintiff was not disabled.[1] AR

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401, *et seq*. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, *et seq*. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

11-19. The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity after January 1, 2003.

2. The claimant has the following severe impairment: depressive disorder NOS with anxiety and rule out cognitive disorder NOS/mild mental retardation (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, (20 CFR 920 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform an unlimited range of work physically and mentally simple repetitive, non hazardous tasks with limited contact with others (this is supported by his depressive disorder NOS with anxiety).

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 6, 1975 and was 28 years old on the date the application was filed, which is defined as a younger individual age 18-44 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act, since April 12, 2004 (20 CFR 416.920(g)), the date the application was filed.

AR 13 -19.

On January 26, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 4-6.

## II. ISSUES PRESENTED

In his motion for summary judgment, plaintiff alleges four errors in the Commissioner's decision. First, he alleges that the ALJ erred in determining plaintiff's residual functional capacity because the assessment did not reflect all the limitations found by the state agency medical consultant. Second, he alleges that the ALJ erred by failing to consider the side effects of plaintiff's prescribed medications. Third, he alleges that the ALJ erred by failing to consider statements submitted by a lay witness. Finally, he alleges error at step five of the sequential evaluation, asserting that the ALJ improperly relied on the Medical Vocational Guidelines despite the presence of non-exertional functional limitations.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV. ANALYSIS

### A. Medical Consultant's Findings and RFC Determination

Plaintiff asserts that the ALJ's determination of plaintiff's residual functional capacity was flawed because it did not reflect every functional limitation assessed by the state agency medical consultant, Dr. E. Harrison, M.D. The ALJ found that in light of plaintiff's severe depressive disorder and other symptoms, plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, provided it was limited to physically and mentally simple, repetitive, non-hazardous tasks, with limited contacts with others. AR 14.

Plaintiff argues that this RFC assessment is in error because it does not reflect Dr. Harrison's findings that plaintiff was moderately limited in both his ability to respond appropriately to changes in work settings and to maintain concentration for extended periods of time. *See* Pl.'s Mem. of P.&A. in Supp. of Summ. J. ("Pl.'s Br."), 10:23-11:9.

Dr. Harrison's findings with respect to plaintiff's limitations in maintaining concentration were set forth in the psychiatric review technique form ("PRTF"), and were made in the context of the general evaluation of a mental impairment, as required under 20 C.F.R. § 416.920a(c). AR 145. The PRTF is used to assess an individual's limitations resulting from a mental impairment in categories identified in "paragraph B" and "paragraph C" of the adult mental disorder listings (referred to as the "B" and "C" criteria).[2] *See* Social Security Ruling ("SSR") 96-8p. The limitations identified by a medical professional under the "B" and "C" criteria are not an RFC assessment. *Id.* Rather, they are used to rate the severity of mental impairments at

---

[2] The "B" criteria are used to evaluate functional loss resulting from a mental impairment and contemplate restrictions in the following areas: (1) activities of daily living, (2) maintaining social functioning, (3) maintaining concentration, persistence, or pace, and (4) episodes of extended periods of decompensation. *See* 20 C.F.R. pt. 404, subpt. P, App. 1, 12.00, Mental Disorders. The "C" criteria contemplate additional functional criteria in connection with specific listings. *Id.*

steps two and three of the sequential evaluation. *Id.* Thus, the ALJ was under no obligation to include, verbatim, findings from a PRTF in his ultimate assessment of plaintiff's RFC at steps four and five.[3]

Moreover, the determination of a claimant's RFC is wholly within the province of the ALJ. *See* SSR 96-8p. The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *See id.*

Here, the ALJ's RFC assessment is based on Dr. Harrison's medical opinion that plaintiff is "able to learn, carry out, sustain, and adapt to only simple repetitive, non hazardous [tasks] where there is little contact with others." AR 133. Contrary to plaintiff's assertion, that narrative opinion does not contradict the box checked by Dr. Harrison on the Mental RFC Assessment form indicating moderate limitations in plaintiff's ability to respond appropriately to changes in a work setting. AR 132. Reading those notes together with his final, narrative opinion, it is clear that Dr. Harrison concluded that although plaintiff had moderate limitations in several areas of functioning, he was not precluded from work involving simple, repetitive, non-hazardous tasks. Indeed, it is consistent and logical to assume that a job requiring performance of simple, repetitive tasks would not entail frequent or abrupt changes.

Not only is Dr. Harrison's opinion internally consistent, it is consistent with all other medical opinions in the record. AR 131-33. Examining psychologist, Dr. David H. Black, Ph.D., opined that plaintiff's "ability to understand, carry out and remember simple instructions *may be only slightly* impaired by the level of cognitive functioning." AR 130 (emphasis added). He further opined that plaintiff's ability to "deal with changes in a routine work setting [] may be slightly to moderately impaired." AR 130. This opinion was based on his evaluation of plaintiff and plaintiff's performance on a number of psychological and cognitive tests. Dr. Black

---

[3] The residual functional capacity determination is made in order to assess the claimant's ability to perform work functions of his past work (step four) and, if unable to do so, other work (step five).

6

repeatedly noted that the test's results, though indicative of low cognitive functioning, were a probable underestimate of plaintiff's functional abilities and should be interpreted with caution. His comments in this regard were based on plaintiff's admission that he had taken Vicodin just prior to the evaluation, which he said made him feel hazy, as well as plaintiff's admission to having used marijuana the day before.[4] AR 128-30. Given Dr. Black's doubts about the test results, his diagnoses were "rule out" cognitive disorder NOS, and "rule out" mild mental retardation.[5] AR 130.

Although the diagnosis by examining psychiatrist, Dr. Reynaldo Abejuela, M.D., differed from Dr. Black's, his opinion regarding plaintiff's functional limitations was very similar. Dr. Abejuela diagnosed plaintiff with "depressive disorder, NOS, with anxiety," AR 122, and assessed modest functional limitations with regard to plaintiff's ability to work. Specifically, he opined that plaintiff's "concentration, persistence and pace are slightly impaired," his "ability to understand, carry out, and remember simple instructions is *not impaired*," and his ability to deal with changes in a routine work setting is *slightly impaired but does not preclude function*." AR 123-24 (emphasis added).

The record shows that the ALJ gave due consideration to the opinions of Drs. Black, Abejuela and Harrison, and relied on them in "establishing plaintiff's residual functional capacity." AR 17. His ultimate RFC determination is supported by each of those opinions, and does not evidence the contradictions or errors plaintiff alleges.

////

////

---

[4] Plaintiff reported injuring his hand on a hedge trimmer the day before the evaluation, and his use of Vicodin appears to be in connection with that injury. AR 128.

[5] Rule-out diagnoses merely indicate that additional testing or observation are required in order to establish the true diagnosis. *See Simpson v. Commissioner*, No. 99-1816-JO, 2001 U.S. Dist. LEXIS 4395, at *26 (D. Or. Feb. 8, 2001) ("'Rule-Out' simply means that a particular diagnosis is neither ruled in nor ruled out by the examining physician.").

7

### B. Consideration of Medication Side-Effects

Next, plaintiff contends that the ALJ erred by failing to consider the side effects of his medications and their impact on his ability to work. In particular, plaintiff argues that the ALJ failed to account for side effects from plaintiff's prescription for "medical cannabis" and Vicodin. Plaintiff points to Dr. Black's report, which indicates that plaintiff had taken Vicodin prior to the psychological evaluation, and that it made him feel like he was in a "daze" or "fog." AR 128. As discussed above, plaintiff's use of Vicodin appears to have been in connection with an injury from hedge trimmers. AR 128. His use of medical cannabis was purportedly to treat migraines. The record shows a cannabis prescription written by a Dr. Turnipseed, but the "serious medical condition" mentioned in the prescription is not otherwise explained. AR. 117.

Despite plaintiff's assertion of error with regard to the "side effects" from these medications, the record indicates that plaintiff only took Vicodin for two months and stopped using cannabis altogether by the time of the hearing. AR 160, 168-69. Plaintiff did not testify regarding any side effects from his prior use of these medications, and stated under oath at the hearing that he was not currently taking any medications. AR 160. Accordingly, the ALJ committed no error in failing to discuss the purported side effects of plaintiff's "medications."

### C. Lay Witness Testimony

Next, plaintiff alleges that the ALJ erred by failing to consider the lay witness report of his friend, Tiffany Dawson. AR 77-85. Neither Ms. Dawson nor any other lay witness testified at the hearing.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each

witness." *Dodrill*, 12 F.3d at 919.  Where the ALJ fails to discuss competent lay testimony that is favorable to plaintiff, the error is harmless only if the court can confidently conclude that no reasonable ALJ, when fully crediting testimony, could have reached a different disability determination.  *Stout v. Commissioner SSA*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, the ALJ failed to discuss the third-party report by Ms. Dawson.  Ms. Dawson reported that "Jason and I do his everyday functions. . . . We help him do his general activities such as watch cartoons, transportation, daily chores, sleep, eat."  AR 77.  She reported that plaintiff has to be told what to wear, when to change, when to bathe, shave and care for his hair.  AR 78.  Dawson reported that he is not "mentally capable" of preparing his own meals.  AR 79.  She also reported that plaintiff does not go about alone "because he is extremely paranoid."  AR 80.

Although the ALJ did not specifically address Ms. Dawson's statement, the error is harmless because, even if her report were fully credited, no reasonable ALJ would have reached a different disability determination.  *See Stout*, 454 F.3d at 1056.  First, it is unclear in what respect an ALJ could credit Ms. Dawson's statements.  Many of them are conclusory and offer medical opinions, such as the remark that plaintiff is mentally incapable of preparing his own meals.  AR 79.  This statement is akin to a medical diagnosis beyond the competence of a lay witness, and as such, does not constitute competent evidence.  *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  Moreover, it is contradicted by plaintiff's own statements that he does not prepare his own food because he thinks he will break something and anger his mother.  *See* AR 127-28, 164.

Further, although Ms. Dawson's report that plaintiff has to be reminded to groom himself conflicts with plaintiff's own statements to the SSA and Drs. Black and Abejuela, AR 46, 120, 127, crediting those statements would not necessarily dictate a different disability determination.  In fact, this evidence supports the conclusion that plaintiff is capable of understanding and following instructions, and is able to perform simple, repetitive tasks.  Similarly, Ms. Dawson's

statements about plaintiff's alleged paranoia do not dictate a different disability determination, given the ALJ's finding that plaintiff can work provided he has limited contact with others. Finally, Ms. Dawson's statements that she helps plaintiff with activities like "watching cartoons" and "sleeping" offer no meaningful evidence with regard to plaintiff's ability to perform work-related activities.[6]

Based on the foregoing, the ALJ's failure to explicitly address Ms. Dawson's report was harmless because no reasonable ALJ, when fully crediting those statements, could have reached different disability determination.

### D. No Error at Step Five

Plaintiff contends that the ALJ should have utilized a vocational expert at step five of the sequential evaluation to establish whether there was work that plaintiff could perform in light of his nonexertional limitations. In particular, plaintiff argues that his limitation to non-hazardous tasks and limited contact with others are nonexertional limitations requiring the testimony of a vocational expert at step five. *See* Pl.'s Rply, 2:6:10.

Rather than call a vocational expert, the ALJ used the Medical Vocational Guidelines as a framework to determine that there was a significant number of jobs in the national economy that plaintiff could perform. AR 18-19. The Guidelines in table form (referred to as the "grids") are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). They reflect combinations of residual functional capacity, age, education, and work experience, and can be used to determine whether work other than a claimant's past relevant work is available. *See Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

---

[6] It should also be noted that plaintiff's assertion that Ms. Dawson's statements are "supported by his own testimony" does not strengthen his argument. *See* Pl.'s Br., 15:8-12. The ALJ discredited much of plaintiff's testimony, and plaintiff has declined to challenge that finding in the present action.

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[7] *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990), *overruled on other grounds*, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc).  The ALJ is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation.  *Desrosiers*, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category.  *Desrosiers*, 846 F.2d at 578.  "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines." *Id.*, at 577-78.

When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable.  *Id.*, at 577.  In such cases, the ALJ must take the testimony of a vocational expert in order to identify specific jobs within the claimant's capabilities.  *Burkhart*, 856 F.2d at 1340 (citations omitted); *Aukland v. Massanari*, 257  F. 3d. 1033 (9th Cir. 2001).

In this case, the ALJ found that although plaintiff's ability to perform work at all exertional levels was compromised by nonexertional limitations, those limitations had "little or no effect on the occupational base of unskilled work at all exertional levels."  AR 18.  He noted that the grids showed there were approximately 2,500 separate, sedentary, light, and medium occupations in the national economy that can be performed with a short demonstration or within

---

[7] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10; *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 6 (9th Cir. 1989).  Nonexertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities.  20 C.F.R. § 416.969a (c) (1996); SSR 83-10; *Cooper*, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).

11

thirty days. AR 18 (citing 20 C.F.R., pt. 404, subpt. P, App. 2 § 200.00(b)); *see also* SSR 85-15 ("Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for a person who can meet the mental demands of unskilled work."). The ALJ further noted that "the primary work functions in the bulk of unskilled work relate to working with things rather than with people or data," and that an "inability with having contact with other people does not bar the claimant from performing unskilled work." AR 19 (citing 20 C.F.R., pt. 404, subpt. P, App. 2 § 201.00(i) (unskilled work involves working with things rather than people)).

Plaintiff argues that the ALJ's determination that he could perform unskilled work because it involves "working with things rather than people" does not account for his need to work in isolation. The ALJ did not find that plaintiff needs to work in isolation, and there is no evidence in the record to support that limitation. Rather, the ALJ concluded, based on the three medical opinions discussed above, that plaintiff was not completely incapable of working around others. Indeed, Drs. Abejuela and Black both found plaintiff's ability to respond to co-workers and supervisors only slightly impaired, AR 123, 130, and Dr. Harrison found no significant limitations in that category of functioning. AR 132.

Unskilled work requires one to understand, carry out, and remember simple instructions, and to respond appropriately to supervision, coworkers, and usual work situations including dealing with changes in a routine work setting. SSR 85-15. As set forth above, plaintiff was found to have only slight to moderate (or no) limitations in these areas. Only a "substantial loss of ability to meet any of these basic work-related activities" significantly erodes the occupational base. SSR 85-15. Here, there is no evidence of such a "substantial loss." The ALJ's conclusion that plaintiff was capable of performing the requirements of unskilled work, and that such work accommodated his need for "limited contact with others," was fully supported by substantial evidence in the record and based on applicable regulations. Thus, there was no error at step five of the sequential evaluation.

**V. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied;

2. The Commissioner's cross-motion for summary judgment is granted;

3. The Clerk is directed to enter judgment for the Commissioner.

DATED: May 13, 2008.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE